

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ETHEL WILLIAMS, JAN WRIGHTSELL, )
DONELL HALL, and EDWARD )
BRANDON, on behalf of themselves )
and all others similarly )
situated, )
 )
        Plaintiffs, )
 )
   v. )    No. 05 C 4673
 )
ROD BLAGOJEVICH, in his official )
capacity as Governor of the State )
of Illinois, CAROL L. ADAMS, )
in her official capacity as )
Secretary of the Illinois )
Department of Human Services, )
LORRIE STONE, in her official )
capacity as Director of the )
Division of Mental Health of )
the Illinois Department of Human )
Services, ERIC E. WHITAKER, )
in his official capacity as )
Director of the Illinois )
Department of Public Health, )
and BARRY S. MARAM, in his )
official capacity as Director )
of the Illinois Department of )
Healthcare and Family Services, )
 )
        Defendants. )

## **OPINION AND ORDER**

This class action concerns the State of Illinois's alleged duty under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101(a)(2), 12101(a)(5), 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), to provide qualified

persons with mental illnesses who reside in privately owned Institutions for Mental Diseases ("IMD") the opportunity to be placed in an integrated community setting. See generally Olmstead v. L.C., 527 U.S. 581 (1999). The defendants in this case, all sued in their official capacity, are the Governor of Illinois; the Secretary of the Illinois Department of Human Services; the Director of the Division of Mental Health of the Department of Human Services; the Director of the Illinois Department of Public Health; and the Director of the Illinois Department of Healthcare and Family Services. A Fed. R. Civ. P. 23(b)(2) class has been certified "consisting of Illinois residents who: (a) have a mental illness; (b) are institutionalized in a privately owned Institution for Mental Diseases; and (c) with appropriate supports and services may be able to live in an integrated community setting." Williams v. Blagojevich, 2006 WL 3332844 *5 (N.D. Ill. Nov. 13, 2006). Plaintiffs seek declaratory and injunctive relief. The relief requested does not require that each member of the class be placed in the community. Instead, plaintiffs seek to have procedures implemented which would require that a proper evaluation be offered and made and that appropriate support and services be available for those who qualify for and choose community placement. An IMD resident's decision to consent to

the recommended placement would not be made until after an appropriate evaluation is performed and the individual knows what type of placement is being recommended. See id. at *2, 4-5.

Presently pending are four motions to quash subpoenas that plaintiffs issued to a number of IMDs in Illinois. The IMDs are not parties to this action. One motion is brought by defendants and the other three are brought by different groupings of IMDs. The subpoenas seek access to residents' records and/or the opportunity to interview randomly selected residents. The records would be examined by and the interviews conducted by psychological experts retained by plaintiffs. The experts intend to study selected IMD residents to make generalized determinations regarding what opportunities for community placement are being provided, whether residents would qualify for such placements, and whether residents would be interested in such placements. Plaintiffs' team of experts are experienced both in interviewing institutionalized persons with mental illnesses and with conducting studies of such persons. While many, or possibly most, of the residents that will be interviewed are members of the certified class, some or many will not be members of the class because they will not satisfy the criterion of being able to live in an integrated community setting with appropriate supports and services.

All the motions to quash raise the issue of privacy concerns regarding the experts examining medical records of the residents without first obtaining the consent of the residents. Protective orders are in place requiring that plaintiffs' experts and others involved in this litigation keep the medical information confidential, whether the IMD resident is a class member or not. The protective orders comply with requirements of the Health Insurance Portability and Accountability Act ("HIPAA") that allow disclosures of the medical records for litigation purposes without requiring the specific consent of the individual patient. See 45 C.F.R. §§ 164.512(e)(1)(ii)(B), (e)(1)(v); Northwestern Mem. Hosp. v. Ashcroft, 362 F.3d 923, 925 (7th Cir. 2004); Ligas v. Maram, 2007 WL 2316940 *5-6 (N.D. Ill. Aug. 10, 2007) ("Ligas I"); Ligas v. Maram, 2007 WL 4225459 *2 (N.D. Ill. Nov. 27, 2007) ("Ligas II"); Howard v. Rustin, 2007 WL 2811828 *1-3 (W.D. Pa. Sept. 24, 2007). Consent requirements of the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("MHDDCA") are inapplicable to discovery in this case which is based on federal question jurisdiction. Northwestern, 362 F.3d at 925; Ligas I, 2007 WL 2316940 at *6.[1]

---

[1] None of the movants contend that any of the medical records that could be disclosed are protected by the federal psychotherapist-patient privilege. Cf. Ligas II, 2007 WL 4225459 at *5-7. See generally Jaffee v. Redmond, 518 U.S. 1 (1996).

None of the subpoenas will be quashed based on there being a necessity to obtain the consent of any IMD resident before plaintiffs' experts or counsel can see any of the medical records that are responsive to the subpoenas.

On September 28, 2007, plaintiffs issued subpoenas to eight IMDs. Six of those IMDs[2] move to quash this subpoena and a seventh IMD (Columbus Manor Residential Care) filed a separate and narrower motion to quash or modify after resolving some disputed issues with plaintiffs. Defendants themselves separately move to quash the subpoenas that were issued to all eight IMDs.[3]

The September 28 Subpoena is characterized as a "Subpoena Duces Tecum for Inspection of Premises and Documents." A rider to the subpoena describes the inspection and document request as follows:

---

[2]The six IMDs are Clayton Residential Home, Inc., Thornton Heights Terrace, Ltd., Sharon Health Care Woods, Inc., Greenwood Care, Inc., Somerset Place, LLC, and Bayside Terrace LLC. This group will be referred to as the "Clayton Group" and this motion as the "Clayton Motion." Although the Clayton Group delivered to chambers judge's copies of the Clayton Motion and a supporting brief that contain stamps indicating they were delivered on October 5, 2007, those documents do not appear on the docket. They have been considered, but the Clayton Group should complete the record by electronically filing both documents.

[3]The eighth IMD is Margaret Manor North. It is unknown whether Margaret Manor itself objects to the subpoena, nor whether it has already fully or partially complied with the subpoena.

### INSPECTION OF THE PREMISE
1. Plaintiffs request that [the IMD] permit Dr. Jack Tebes, Dr. Paul Thomas Amble, and Dr. Madelon Visitainer Baranoski to enter and observe the facility at [the IMD] located at . . . on October 9-10, 2007.
2. Plaintiffs request that [the IMD] provide a current list of residents at the facility and thereafter provide Drs. Tebes, Amble and Baranoski, or anyone working on their behalf, access to the residents who are selected by Plaintiffs' consulting experts.

### DOCUMENTS TO BE PRODUCED
For each resident selected by Drs. Tebes, Amble and Baranoski please produce portions of the resident's mental health and medical records identified by Plaintiffs' consulting experts.

Subsequent communications with the IMDs have made clear that plaintiffs do not intend a general inspection of the premises, only to be on the premises to interview selected residents and see the related records of the selected residents. Plaintiffs have also attempted to clarify what records they will request for each selected resident. They have informed the IMDs that, on the day of inspection, they will limit their document requests to items in the current record or chart that is readily available at the IMD. Any followup requests for additional documents could be resolved at a later time.

The movants contend that the subpoena itself must sufficiently identify what documents are requested and, even if the clarifications should be considered, plaintiffs' request is still insufficiently specific. Federal Rule of Civil Procedure

45(a)(1)(iii)[4] requires that a subpoena <u>duces tecum</u> "command" the production of "designated documents." While it is improper to use a subpoena as a fishing expedition, in appropriate situations it is sufficient to request all documents pertaining to a particular subject or falling within a particular category. <u>See</u> Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Proc.: Civil 2d</u> § 2457 at 34-35 & nn.9-10 (1995). Here, plaintiffs have requested medical records of the residents that will be selected. In this situation, that is sufficient to overcome any objection as to form. Moreover, plaintiffs have clarified that they will presently limit the request to current records that are readily available, not requiring the IMDs to be prepared to search through archived documents. The issue is whether the requested documents and interviews are overbroad, irrelevant, or unduly burdensome.

> The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. <u>See</u> <u>Jackson v. Brinker</u>, 147 F.R.D. 189, 193-94 (S.D. Ind. 1993) ("[t]he scope of material obtained by a Rule 45 subpoena is as broad as permitted under the discovery rules . . . if the material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of a subpoena.") (internal citations omitted); Fed. R. Civ. P. 45 advisory committee note to the 1991 amendment. The party opposing discovery has the burden of showing the discovery is

---

[4] The amended language that went into effect on December 1, 2007 is being cited. In any event, the prior version was substantively the same.

> overly broad, unduly burdensome, or not
> relevant. Wauchop v. Domino's Pizza, Inc., 138
> F.R.D. 539, 543 (N.D. Ind. 1991). To meet this
> burden, the objecting party must "specifically
> detail the reasons why each [request] is
> irrelevant. . . ." Schaap v. Executive Indus.,
> Inc., 130 F.R.D. 384, 387 (N.D. Ill. 1990).
> Under Rule 26(b)(2), the Court must
> weigh the burden or expense of proposed
> discovery and its likely benefit by taking into
> account "the needs of the case, the amount in
> controversy, the parties' resources, the
> importance of the issues at stake in the
> litigation, and the importance of the proposed
> discovery in resolving the issues." Simon
> Property Group L.P. v. mySimon, Inc., 194 F.R.D.
> 639, 640 (S.D. Ind. 2000) (Hamilton, J.).

Graham v. Casey's General Stores, 206 F.R.D. 251, 253-54 (S.D. Ind. 2002). Accord Richter v. Mutual of Omaha Ins. Co., 2006 WL 1277906 *2 (E.D. Wis. May 5, 2006).

Plaintiffs' experts estimate that each interview will last about a half hour. The IMDs contend that the interviews are intrusive on the residents' privacy and disruptive of their treatment. They further contend that these burdens are undue in light of the fact that the short interviews are unlikely to produce useful information. The IMDs contend that the information gathered in the interviews will be highly subjective.

The claims in the Ligas case concern providing developmentally disabled persons in intermediate care facilities ("ICF") adequate opportunities for community placement. The plaintiffs issued subpoenas to the ICFs that included requests to have their experts observe non-communicative, developmentally

disabled residents as part of a study for the litigation. When initially quashing the subpoenas for various reasons, Magistrate Judge Ashman found as to the expert observations that the observations were likely to yield "inherently subjective data" that were likely to "lead only to very marginal probative evidence, if any at all." Ligas I, 2007 WL 2316940 at *4. Defendants contend the interviews in the present case are also likely to yield subjective information of limited probative value.

The burden is on movants to support that the subpoenas are overbroad. It cannot be found that the proposed interviews are unlikely to yield probative information. The three experts retained by plaintiffs all have substantial qualifications and experience. In addition to their training and treatment experience, they have vast experience interviewing mentally ill persons and conducting studies of mentally ill persons and the services provided to them. The experts opine that their interviews are likely to produce usable material for their intended purpose. There is no sufficient basis for finding otherwise. Also, it is noted that this situation is different from that faced in Ligas. Here, the residents will be able to communicate with the interviewers. Statements of the residents themselves are likely to yield information not available in the

medical records alone or from an interview of treatment providers at the IMDs.

Defendants and the Clayton Group do not provide any specific support for their contention that the interviews will disrupt the operations of the facilities or interfere with treatment provided to the residents. While there will of course be some burden of allowing visitors into the facilities and providing them the necessary documents, there is no indication that this burden will be undue. As to the effect on residents, Columbus Manor provides two unsworn letters from an expert experienced in the field who has also conducted studies of facilities for litigation and other purposes. He simply states without amplification that "residents, particularly as they are emotionally and mentally disabled require protection from intrusive and unplanned (on their part) examinations by strangers." Oct. 13, 2007 Letter of B. Rubin at 1. Dr. Rubin does not explain what he would consider to be an intrusive interview nor what protections must be in place.[5] The joint declaration of plaintiffs' experts sufficiently supports that the interviews they intend to conduct are not likely to interfere with the treatment of residents or otherwise cause harm to them.

---

[5] With its reply, Columbus Manor submits a second letter from Dr. Rubin. Although, plaintiffs' answer brief raises issues regarding the lack of specificity for this assertion, Dr. Rubin does not provide further explanation in his second letter dated October 23, 2007.

The experts do not know of any such harm resulting from the hundreds of study interviews that they have conducted in the past.

No interview will be conducted unless the resident agrees to be interviewed. Therefore, the interviews themselves will not unduly intrude on any resident's privacy since no resident will be forced to participate without his or her consent. Movants contend not all the residents are necessarily competent to consent. In Illinois, however, a person is presumed competent and plaintiffs have already agreed to exclude from their selection any resident who has a guardian. Thus, none of the residents to be interviewed have been declared incompetent. Since the experts are professional therapists with ethical obligations, it is assumed that plaintiffs' experts will not continue an interview if the resident is incapable of consent or withdraws consent. Also, the experts do not intend to examine the medical records until after the interviewee has consented to be interviewed, thereby avoiding undue privacy intrusion.

The IMDs contend that eliminating those who cannot consent will skew the results of the study. That, however, is an issue that will go to the weight to be accorded any results that may be the subject of future testimony. That is also true of other contentions of the parties regarding the likely reliability of the study. None of them make the potential results so likely

to be of minimal or no value that the potential burdens outweigh the potential value of the evidence. Such issues are more properly raised on a motion in limine if evidence based on the study and interviews is to be presented.

The IMDs, particularly Columbus Manor, want to have IMD personnel or defendants' attorneys present during any interviews. Columbus Manor suggests a protocol under which an IMD employee initially contacts the resident to provide a brief explanation and introduction before one of the experts provides greater detail and obtains consent for an interview. Columbus Manor also proposes that the resident be asked for consent to have a court reporter record the interview. While Columbus Manor's expert states that he would find it convenient to have a court reporter instead of having to take all his own notes, plaintiffs' experts do not desire such a setup. They believe recording interviews would cause some residents to be less forthright. They also believe that having IMD personnel or lawyers present could cause residents to be less open. The IMDs and defendants have no right to be present during the interviews. The court defers to the professional judgment of the experts in deciding that their presence would be disruptive. The experts may conduct the interviews in the manner proposed by them.

There is no sufficient basis for finding that the interviews will be an undue burden.

Movants also contend that the requests are overbroad. There is no basis for finding that the experts will ask interview questions that go beyond the purpose of their study, which is relevant to the claims before the court.

Still to be considered are the documents to be provided. The IMDs do not show that providing the documents will itself be particularly burdensome. The issue still to be resolved is whether the documents requested are overbroad. Movants contend that the medical records requested include much irrelevant information, such as medical information about the resident's physical condition. The experts state that, in examining the medical records, they will focus on current treatment plans and the most recent discharge plan. They note, however, that a resident's physical, clinical, and social circumstances, as well as their history of medications, are all pertinent to their capacity to live in a more integrated setting. The physical aspects of a resident's medical records are not necessarily irrelevant to the study being conducted. The subpoenas are not overbroad because the resident medical records will include items not limited to mental conditions.[6]

---

[6]In Ligas I, 2007 WL 2316940 at *4, Magistrate Judge Ashman found it was overbroad to request the residents' full medical records, including specifically requesting dental records. In that case, however, there was no articulation of the reason these records were requested. See id. Here, plaintiffs' experts express the opinion that physical and social conditions may be relevant to whether a community placement is appropriate.

The September 28 Subpoena will not be quashed. Consistent with the discussion contained herein, the IMDs must respond to the subpoenas. It will be left to the IMDs and plaintiffs to establish agreeable and timely dates for compliance with the subpoenas.

Also to be considered are October 8, 2007 subpoenas <u>duces tecum</u> issued to a number of IMDs Ten IMDs[7] have moved to quash or modify the October 8 Subpoena. This subpoena requests particular documents from the files of specified residents at each IMD. The Abbott Group's objections regarding consent are adequately addressed above.

The Abbott Group also raises objections that the October 8 Subpoena is overbroad because some of the documents requested have non-medical information and information about physical conditions. Those sections of the documents, however, are minimal. Also, as previously discussed, information about physical and social conditions may be relevant. It will not be necessary to redact these parts of the documents.

Last, the Abbott Group objects that certain of the requested items do not set an appropriate time frame. As to

---

[7]The ten IMDs are Abbott House, LLC, Albany Care, Inc., Belmont Nursing Home, Inc., Bryn Mawr Care, Inc., Central Plaza Residential Home, Inc., Grasmere Place, LLC, Lydia Healthcare, LLC, Monroe Pavilion Health Treatment Center, Inc., Somerset Place, LLC, and Wilson Care, Inc. This group will be referred to as the "Abbott Group" and the motion will be referred to as the "Abbott Motion."

serious incidents, the resident's level system, and requests for alternative housing, plaintiffs set no time frame. As to these items, the IMDs may limit their responses to January 1, 2003 and later. In all other respects, the Abbott Motion will be denied.

IT IS THEREFORE ORDERED that the motions of defendants and the non-party IMDs to quash and/or modify subpoenas [102, 106, 117] are granted in part and denied in part as described herein. Within 14 days, the parties shall meet and adopt a schedule for the requested interviews and document inspections at the IMDs. A status hearing will be held on April 2, 2008 at 11:00 a.m.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: JANUARY 2, 2008