**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ETHEL WILLIAMS, *et al.*, | ) |
| | ) |
| Plaintiffs, | )    No. 05 C 4673 |
| | ) |
| vs. | )    Judge Hart |
| | ) |
| PAT QUINN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the Joint Motion for Preliminary Approval of Consent Decree and Approval of Notice Plan ("Motion"), submitted by the parties hereto. Having reviewed the Motion and supporting Memorandum, and being otherwise fully advised, IT IS HEREBY ORDERED:

1. The Court preliminarily finds that the Modified Proposed Consent Decree attached hereto as Exhibit A is within the appropriate range of fairness, adequacy and reasonableness.

2. The Court approves the Notice Plan attached hereto as Exhibit B. Notice shall occur by publication, posting on the internet, and sending written notice via first class mail as follows:

    (a)    Defendants shall cause the notice set forth in Exhibit B-1 to this Order to be published in: *Chicago Sun-Times, Daily Herald, Southtown Star, Pioneer Press, Peoria Journal Star, Rockford Register Star, Belleville News-Democrat, Springfield State Journal-Register and Southern Illinoisan.* Publication shall occur on at least a single business day within fifteen (15) business days from the date of preliminary approval of the Consent Decree.

(b)     Defendants shall post notice in the form attached hereto as Exhibit B-2 on the website of the Illinois Department of Human Services, Division of Mental Health (*www.dhs.state.il.us/page.aspx*) within five (5) business days from the date of preliminary approval of the Consent Decree and maintain that posting through and including the date of the fairness hearing set by this Court.

(c)     Plaintiffs' counsel shall post notice in the form attached hereto as Exhibit B-2 on the websites of Equip for Equality (*www.equipforequality.org*), Access Living (*www.accessliving.org*), the American Civil Liberties Union of Illinois (*www.aclu-il.org*), and the Bazelon Center for Mental Health Law (*www.bazelon.org*) within five (5) business days from the date of preliminary approval of the Consent Decree and maintain that posting through and including the date of the fairness hearing.

(d)     Defendants shall arrange and pay for notice to be sent via first class mail in the form attached hereto as Exhibit B-2 to all preadmission screening agencies throughout the State, each of the disability rights advocacy organizations identified in the parties' Notice Plan, and all 26 private Institutions for Mental Diseases located in the State of Illinois with guidance for distribution to all IMD residents and their guardians, if any. All notices must be postmarked within ten (10) business days from the date of preliminary approval of the Consent Decree.

3. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court will hold a fairness hearing regarding the fairness, reasonableness and adequacy of the proposed Decree on 9 -7-2010 at 10:00 a.m. All class members, guardians or others who wish to participate in the

fairness hearing, or comment on or object to the proposed Decree, may file with the Court a written submission by **8-10-2010** and serve a copy of the submission on:

Benjamin S. Wolf
Roger Baldwin Foundation of ACLU, Inc.
180 N. Michigan Avenue, Suite 2300
Chicago, Illinois 60601

The parties may file responses to the written submissions on or before **8-24-2010**

Entered: **5-27-** , 2010

William T. Hart
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ETHEL WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05 C 4673 |
| | ) | |
| vs. | ) | |
| | ) | Judge William T. Hart |
| | ) | Magistrate Judge Morton Denlow |
| PAT QUINN, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MODIFIED PROPOSED CONSENT DECREE**

# TABLE OF CONTENTS

**INTRODUCTION AND BACKGROUND** .............................................................................. 1

**DECREE**.................................................................................................................................... 2

I. JURISDICTION ...................................................................................................................... 2

II. PURPOSE………......……………………………………………………………………….2

III. CLASS DEFINITION ......................................................................................................... 2

IV. DEFINITION OF TERMS ................................................................................................... 2

V. THE MENTAL HEALTH SERVICES SYSTEM ................................................................. 7

VI. INDIVIDUALIZED EVALUATIONS AND PLANNING FOR INDIVIDUALS
RESIDING IN IMDS.................................................................................................................. 7

VII. OUTREACH...................................................................................................................... 15

VIII. IMPLEMENTATION....................................................................................................... 15

IX. MONITORING AND COMPLIANCE............................................................................... 18

X. NAMED PLAINTIFFS......................................................................................................... 20

XI. ATTORNEYS' FEES AND COSTS................................................................................... 20

XII. MISCELLANEOUS PROVISIONS.................................................................................. 21

## INTRODUCTION AND BACKGROUND

Plaintiffs[1], a class of Illinois residents with Mental Illness living in Institutions for Mental Diseases ("IMDs"), filed this lawsuit on August 15, 2005, seeking declaratory and injunctive relief to redress violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Plaintiffs allege that they are needlessly segregated and institutionalized in IMDs, where they are forced to live with dozens—and often hundreds—of other people with Mental Illness, in violation of the ADA and the Rehabilitation Act requirements to administer services in the most integrated appropriate setting. See generally Williams v. Blagojevich, 2006 WL 3332844 (N.D. Ill. Nov. 13, 2006).

Plaintiffs allege that Defendants have denied them the opportunity to live in integrated settings where they could lead more independent and more productive lives in their own communities. Plaintiffs seek injunctive relief (1) requiring Defendants to inform Plaintiffs that they may be eligible for community services and have a choice of such services, (2) requiring Defendants to promptly determine eligibility for such services, (3) prohibiting Defendants from arbitrarily denying eligibility for services, and (4) requiring Defendants to promptly provide appropriate services that allow Plaintiffs to live in the most integrated setting appropriate. Defendants deny liability and specifically deny that they have violated the ADA or the Rehabilitation Act.

Therefore, upon all of the foregoing, and the Court being otherwise fully advised, the Court hereby ORDERS, ADJUDGES and DECREES as follows:

---

[1] Capitalized terms set forth herein are defined in Section IV, "Definition of Terms." Noncapitalized terms will have the meaning ordinarily attributed to them and shall be separate and apart from the terms defined in Section IV, "Definition of Terms."

<h1 style="text-align:center">DECREE</h1>

## I. JURISDICTION

1. The Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## II. PURPOSE

2. The purpose of this Consent Decree is to assure that Defendants provide Plaintiffs with the opportunity to receive the services they need in the most integrated setting appropriate and to promote and ensure the development of integrated settings that maximize individuals' independence, choice, opportunities to develop and use independent living skills, and afford the opportunity to live similar lives to individuals without disabilities.

## III. CLASS DEFINITION

3. The Class is defined as:

All Illinois residents who are eighteen (18) years old or older and who:

(a) have a Mental Illness;

(b) are institutionalized in a privately owned Institution for Mental Diseases; and

(c) with appropriate supports and services may be able to live in an integrated community setting.

## IV. DEFINITION OF TERMS

4. As used herein, the following terms have the following meanings:

i) "Class" and "Class Members" mean the persons who, as of the date of Approval of the Consent Decree or at any time in the future while this lawsuit is pending and during the time covered by the Decree, meet the definition set forth in Section III, above.

ii)    "Community-Based Services" means those services provided under the Illinois Medicaid State Plan, as well as the services described in the Medicaid Community Mental Health Services Program administered by the Illinois Department of Human Services' Division of Mental Health and authorized pursuant to 59 Ill. Adm. Code Part 132 (hereafter referenced as Rule 132), in effect as of the date of Approval of the Decree, including any amendments thereto.

iii)    "Community-Based Setting" means the most integrated setting appropriate

for a person with Mental Illness, where the setting is designed to promote independence in daily living, economic self-sufficiency and the ability to interact with non-disabled persons to the fullest extent possible. A Community-Based Setting may include: (1) Permanent Supportive Housing; (2) independent housing with the Class Member's family or friends; (3) other independent housing not owned or operated by a social service entity; or (4) any supported or supervised residential service within the DMH service taxonomy.

iv)    "Community-Service Provider" or "Provider" means a provider certified by the Illinois Department of Human Services for the provision of Community-Based Services.

v)    "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

vi)    "Decree" means this Consent Decree.

3

vii)    "Defendants" means the Governor of the State of Illinois, the Secretary of the Illinois Department of Human Services, the Director of the Division of Mental Health of the Illinois Department of Human Services, the Director of the Illinois Department of Public Health, the Director of the Illinois Department of Healthcare and Family Services, and any of their successors.

viii)    "Evaluation" means an assessment provided by a Qualified Professional under contract with the State to residents of IMDs or potential residents of IMDs, and includes Evaluations conducted (i) to implement this Decree, (ii) as part of a PASRR Process, (iii) in response to a report of significant change in a resident's physical or mental condition, (iv) in response to a request from a resident, or (v) as part of a regular assessment of residents. Each Evaluation shall include, although not be limited to, an assessment of the Class Member's medical condition as it bears on his or her appropriateness for placement in a Community-Based Setting, a consultation with the Class Member's psychiatrist and/or other professional staff where appropriate, and a consultation with other appropriate people of the Class Member's choosing.

ix)    "Implementation Plan" means the plan set forth in Subsection VIII.11. below.

x)    "Illinois Medicaid State Plan" or "State Plan" means the plan that was submitted by the State of Illinois to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services,

4

in accordance with Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, in effect as of the date of the Approval of the Decree, including any amendments.

xi) "Institution for Mental Diseases" or "IMD" means a privately owned long-term care facility classified as an Institution for Mental Diseases for purposes of claiming Federal Medicaid matching funds.

xii) "Mental Illness" means serious mental illness as defined in 77 Illinois Administrative Code, Chapter I, Section 300.4000.

xiii) "Monitor" means the person or entity appointed by the Court pursuant to Section IX hereof to perform the functions more fully described therein.

xiv) "Named Plaintiffs" means the following people, each of whom the Court certified as a class representative in the litigation: Ethel Williams, Jan Wrightsell, Edward Brandon, and Gilbert Parham.

xv) "Parties" means Plaintiffs and Defendants, collectively.

xvi) "Plaintiffs" means the Named Plaintiffs and Class Members, collectively.

xvii) "Pre-Admission Screening and Resident Review (PASRR) Agency" means any independent agency that (1) contracts with the State to perform, in conformance with federal screening requirements, pre-admission screening and resident reviews on persons with Mental Illness who may be placed or currently reside in an IMD, and (2) as a condition of its contract with the State, has received sufficient training and/or has sufficient experience providing services to demonstrate a comprehensive

understanding of the available residential options, including Permanent Supportive Housing, and Community-Based Services.

xviii) "Pre-Admission Screening and Resident Review (PASRR) Process" means the eligibility, admission and assessment process for individuals who may be or have been placed in an IMD.

xix) "Qualified Professional" means persons who are appropriately licensed, credentialed, trained and employed by a PASRR Agency.

xx) "Permanent Supportive Housing" or "PSH" refers to integrated permanent housing with tenancy rights, linked with flexible Community-Based Services that are available to consumers when they need them, but are not mandated as a condition of tenancy. For purposes of this Decree, PSH includes scattered-site housing as well as apartments clustered in a single building, but no more than 25% of the units in one building with more than four (4) units may be used to serve PSH clients known to have Mental Illness. For buildings with two (2) to four (4) units, no more than 50% of the units may be used to serve PSH clients known to have Mental Illness. However, during the first five years after finalization of the Implementation Plan, up to 75 Class Members may be placed in buildings where more than 25% of the units serve PSH clients known to have Mental Illness if those buildings were used to serve PSH clients prior to March 1, 2010. After the first five (5) years following the finalization of the Implementation Plan, all Class Members who are being served in PSH

shall be offered the opportunity to reside in buildings that comply with the 25% or 50% unit limits set forth above in this subparagraph.

xxi) "Service Plan" as used in this Decree means a plan containing a description of goals, including transition to Community-Based Settings, and strategies that will be employed and services provided to achieve those goals.

xxii) "State" means the State of Illinois.

## V. THE MENTAL HEALTH SERVICES SYSTEM

5. **Development of Community Capacity.** Defendants shall ensure the availability of services, supports and other resources of sufficient quality, scope and variety to meet their obligations under the Decree and the Implementation Plan. Defendants shall implement sufficient measures, consistent with the preferences, strengths and needs of Class Members, to provide Community-Based Settings and Community-Based Services pursuant to the Decree.

## VI. INDIVIDUALIZED EVALUATIONS AND PLANNING FOR INDIVIDUALS RESIDING IN IMDS

6. **Evaluations.**

a) Within two (2) years of the finalization of the Implementation Plan described below, every Class Member will receive an independent, professionally appropriate and person-centered Evaluation of his or her preferences, strengths and needs in order to determine the Community-Based Services required for him or her to live in PSH or another appropriate Community-Based Setting. Any Class Member has the right to decline to take part in such Evaluation. Any Class Member who has

declined to be evaluated has the right to receive an Evaluation any time thereafter on request.

b)    Defendants shall ensure that Evaluations are conducted by Qualified Professionals as defined in this Decree.

c)    Defendants shall ensure, as provided in the Implementation Plan, that all Class Members shall be informed about Community-Based Settings, including Permanent Supportive Housing, and Community-Based Services available to assist individuals in these settings, and the financial support Class Members may receive in these settings.

d)    After the second year following finalization of the Implementation Plan, the Evaluations described in Subsection 6(a) shall be conducted annually. As part of each Class Member's annual Evaluation, the reasons for any Class Member's opposition to moving out of an IMD to a Community-Based Setting will be fully explored and appropriately addressed as described in Section VII. Any Class Member who has received an Evaluation but has declined to move to a Community-Based Setting may request to be reassessed for transition to a Community-Based Setting any time thereafter.

7.    **Service Plans.**

a)    Based on the results of the Evaluations described above, Defendants shall promptly develop Service Plans specific to each Class Member who is assessed as appropriate for transition to a Community-Based Setting. Each Service Plan shall be periodically updated to reflect any changes in needs

and preferences of the Class Member, including his or her desire to move to a Community-Based Setting after declining to do so, and shall incorporate services where appropriate to assist in acquisition of basic and instrumental activities of daily living skills and illness self-management. Acquisition of such skills shall not be a prerequisite for transitioning out of the IMD.

b) For each Class Member who does not oppose moving to a Community-Based Setting, the Service Plan shall, at a minimum, describe the Community-Based Services the Class Member requires in a Community-Based Setting, including the services the Class Member will need to transition to a Community-Based Setting, and a timetable for completing that transition. If there has been a determination that a Class Member is not currently appropriate for PSH, the Service Plan shall specify what services the Class Member needs that could not be provided in PSH and shall describe the Community-Based Services the Class Member needs to live in another Community-Based Setting that is the most integrated setting appropriate.

c) The Service Plan shall be developed by a Qualified Professional in conjunction with the Class Member and his or her legal representative. The Qualified Professional also shall consult with other appropriate people of the Class Member's choosing.

d) Each Service Plan shall focus on the Class Member's personal vision, preferences, strengths and needs in home, community and work

environments and shall reflect the value of supporting the individual with relationships, productive work, participation in community life, and personal decision-making.

e)  The Service Plan shall not be limited by the current availability of Community-Based Services and Settings; provided, however, that nothing in this subparagraph obligates Defendants to provide any type of Community-Based Service beyond the types of Community-Based Services included in the State Plan and Rule 132.

f)  The Service Plan shall be completed within sufficient time to provide appropriate and sufficient transitions for Class Members in accordance with the benchmarks set forth in the Decree.

8.  **Benchmarks for Transitions for Individuals Residing in IMDs.**

a)  Within five (5) years of the finalization of the Implementation Plan, all Class Members who have been assessed as appropriate for living in a Community-Based Setting will be offered the opportunity to move to a Community-Based Setting.

b)  Within one (1) year of finalization of the Implementation Plan, no individual with Mental Illness shall be admitted to an IMD without a pre-screening having first been conducted through the PASRR Process and an initial Service Plan completed. Defendants will ensure that the PASRR Process: identifies and assesses individuals who may be appropriate for placement in a Community-Based Setting; identifies Community-Based Services that would facilitate that placement; and ensures that approved

admissions to IMDs are for only those IMDs that can provide treatment consistent with the individual's initial Service Plan and consistent with the goal of transition to a Community-Based Setting. After the first five (5) years following the finalization of the Implementation Plan, no individual with Mental Illness whose Service Plan provides for placement in Community-Based Settings shall be housed or offered placement in an IMD at public expense unless, after being fully informed, he or she declines the opportunity to receive services in a Community-Based Setting.

c) By the end of the first year after the finalization of the Implementation Plan, Defendants will have: (1) offered placement in a Community-Based Setting to a minimum of 256 Class Members who are assessed as appropriate for living in a Community-Based Setting and who do not oppose moving to a Community-Based Setting; and (2) developed 256 PSH units for the benefit of Class Members.

d) By the end of the second year after the finalization of the Implementation Plan, Defendants will have: (1) offered placement in a Community-Based Setting to a minimum of 640 Class Members (including the 256 referenced in subparagraph 8(c) above) who are assessed as appropriate for living in a Community-Based Setting and who do not oppose moving to a Community-Based Setting; and (2) developed 640 PSH units for the benefit of Class Members.

e) By the end of the third year after the finalization of the Implementation Plan, Defendants will have: (1) offered placement to at least forty percent (40%) of all individuals who are assessed as appropriate for living in a Community-Based Setting and who do not oppose moving to a Community-Based Setting; and (2) developed the corresponding number of PSH units or other Community-Based Settings sufficient for these individuals. For purposes of this subparagraph, these individuals include the total of (1) all Class Members as of the end of the second year after the finalization of the Implementation Plan who are assessed as appropriate for living in a Community-Based Setting and who do not oppose moving to a Community-Based Setting, and (2) all former Class Members who have already transitioned from the IMD to a Community-Based Setting or to another community setting since finalization of the Implementation Plan.

f) By the end of the fourth year after the finalization of the Implementation Plan, Defendants will have: (1) offered placement to at least seventy percent (70%) of all individuals who are assessed as appropriate for living in a Community-Based Setting and who do not oppose moving to a Community-Based Setting; and (2) developed the corresponding number of PSH units or other Community-Based Settings sufficient for these individuals. For purposes of this subparagraph, these individuals include the total of (1) all Class Members as of the end of the third year after the finalization of the Implementation Plan who are assessed as appropriate

for living in a Community-Based Setting and who do not oppose moving to a Community-Based Setting, and (2) all former Class Members who have already transitioned from the IMD to a Community-Based Setting or to another community setting since finalization of the Implementation Plan.

g)  By the end of the fifth year after the finalization of the Implementation Plan, Defendants will have: (1) offered placement to one hundred percent (100%) of all individuals who are assessed as appropriate for living in a Community-Based Setting and who do not oppose moving to a Community-Based Setting; and (2) developed the corresponding number of PSH units or other Community-Based Settings sufficient for these individuals. For purposes of this subparagraph, these individuals include the total of (1) all Class Members as of the end of the fourth year after the finalization of the Implementation Plan who are assessed as appropriate for living in a Community-Based Setting and who do not oppose moving to a Community-Based Setting, and (2) all former Class Members who have already transitioned from the IMD to a Community-Based Setting or to another community setting since the finalization of the Implementation Plan.

h)  After the end of the fifth year following finalization of the Implementation Plan, Class Members who are assessed as appropriate for living in a Community-Based Setting, who do not oppose transition to a Community-Based Setting and whose Service Plans provide for placement in

13

Community-Based Settings shall be offered the opportunity to move to those settings and shall receive appropriate services consistent with the Service Plan within one hundred and twenty (120) days of the date of the Service Plan.

9.   **Community-Based Settings and Community-Based Services**

   a)   PSH will be considered the most integrated setting appropriate for Class Members except that, (1) for any Class Members (i) who have severe dementia or other severe cognitive impairments requiring such a high level of staffing to assist with activities of daily living or self-care management that they cannot effectively be served in PSH, (ii) who have medical needs requiring a high level of skilled nursing care that may not safely be provided in PSH, or (iii) who present an imminent danger to themselves or others, the evaluator will determine the most integrated setting appropriate, which may be PSH or another setting, and (2) nothing in this paragraph shall prevent Class Members who can and wish to live with family or friends or in other independent housing that is not connected with a service provider from doing so. Those Class Members not transitioning from IMDs into PSH will have ongoing reassessments with treatment objectives to prepare them for subsequent transition to the most integrated setting appropriate, including PSH.

   b)   Class Members who move to a Community-Based Setting will have access to all appropriate Community-Based Services, including but not limited to reasonable measures to ensure that their housing remains

available in the event that they are temporarily placed in a hospital or other treatment facility.

c)      Qualified Professionals shall inform Class Members of their options pursuant to subparagraphs 6(a), 6(d), and 7(b) of this Decree.  Class Members shall not be subjected to any form of retaliation in response to any option selected   nor shall they be pressured to refrain from exploring appropriate alternatives to IMDs.

## VII.   OUTREACH

10.     Defendants shall ensure that Class Members have the opportunity to receive complete and accurate information regarding their rights to live in Community-Based Settings and/or to receive Community-Based Services, and the available options and opportunities for doing so.  The Implementation Plan shall describe the methods by which such information will be disseminated, the process by which Class Members may request services, and the manner in which Defendants will maintain current records of these requests. In addition to providing information, Defendants shall ensure that the Qualified Professionals conducting the Evaluations engage residents who express concerns about leaving the IMD with appropriate frequency.  The Implementation Plan shall describe methods for engaging residents, including where appropriate, providing reasonable opportunities for residents to visit and observe Community-Based Settings. All costs for outreach shall be borne by Defendants.

## VIII.  IMPLEMENTATION

11.     **Overview and Contents of the Implementation Plan.**      Defendants, with the

input of the Monitor and Plaintiffs, shall create and implement an Implementation Plan to accomplish the obligations and objectives set forth in the Decree. The Implementation Plan must, at a minimum:

    a)    Establish specific tasks, timetables, goals, programs, plans, strategies and protocols to assure that Defendants fulfill the requirements of the Decree;

    b)    Describe the hiring, training and supervision of the personnel necessary to implement the Decree;

    c)    Describe the activities required to develop Community-Based Services and Community-Based Settings, including inter-agency agreements, requests for proposals and other actions necessary to implement the Decree;

    d)    Identify, based on information known at the time the Implementation Plan is finalized and updated on a regular basis, any services or supports anticipated or required in Service Plans formulated pursuant to the Decree that are not currently available in the appropriate quantity, quality or geographic location;

    e)    Identify, based on information known at the time the Implementation Plan is finalized and updated on a regular basis, any services and supports which, based on demographic or other data, are expected to be required within one year to meet the obligations of the Decree;

    f)    Identify any necessary changes to regulations that govern IMDs in order to strengthen and clarify requirements for services to persons with Mental

Illness and to provide for effective oversight and enforcement of all regulations and laws; and

g) Describe the methods by which Defendants shall ensure compliance with their obligations under Paragraph 6 of this Decree.

h) Describe the mechanisms by which Defendants shall ensure compliance with their obligations under Paragraph 10 of this Decree.

12. Within 135 days of Approval of the Decree, Defendants shall provide the Monitor and Plaintiffs with a draft Implementation Plan. The Monitor and Plaintiffs will participate in developing and finalizing the Implementation Plan, which shall be finalized within nine (9) months following Approval of the Decree. In the event the Monitor or Plaintiffs disagree with the Defendants' proposed Implementation Plan, the matter may be submitted to the Court for resolution.

13. The Implementation Plan shall be updated and amended annually, or at such earlier intervals as Defendants deem necessary or appropriate. The Monitor and Plaintiffs may review and comment upon any such updates or amendments. In the event the Monitor or Plaintiffs disagree with the Defendants' proposed updates or amendments, the matter may be submitted to the Court for resolution.

14. The Implementation Plan, and all amendments or updates thereto, shall be incorporated into, and become enforceable as part of the Decree.

15. In the event that any IMD seeks to discharge any Class Member before appropriate housing is available, including but not limited to circumstances in which an IMD decides to close, Defendants will ensure that those individuals are not left without appropriate housing options based on their preferences, strengths and needs.

## IX.  MONITORING AND COMPLIANCE

16.    **Appointment of a Monitor.** The Court will appoint an independent and impartial Monitor who is knowledgeable concerning the management and oversight of programs serving individuals with Mental Illnesses. The Parties will attempt to agree on the selection of a Monitor to propose to the Court.  If the Parties are unable to reach agreement, each party will nominate one person to serve as Monitor and the Court will select the Monitor.  Within twenty-one (21) days of Approval of the Decree, the Parties shall submit their joint recommendation or separate nominations for a Monitor to the Court. In the event the Monitor resigns or otherwise becomes unavailable, the process described above will be used to select a replacement.

17.    **Duties and Reporting.** The Monitor's duties include evaluating Defendants' compliance with the Decree, identifying actual and potential areas of non-compliance with the Decree, mediating disputes between the Parties, and bringing issues and recommendations for their resolution to the Court.  Within 60 days after the end of each year of service, the Monitor will report to the Court and the Parties regarding compliance with the Decree. Such reports shall include the information necessary, in the Monitor's professional judgment, for the Court and Plaintiffs to evaluate Defendants' compliance or non-compliance with the terms of the Decree. The Monitor may file additional reports as necessary.  Reports of the Monitor shall be served on all Parties.

18.    **Review and Evaluation of Data and Information.** The Monitor shall review and evaluate Defendants' compliance with the terms of the Decree.  Not less than every six (6) months, Defendants shall provide the Monitor and Plaintiffs with a detailed report containing data and information sufficient to evaluate Defendants' compliance with the Decree and Defendants' progress towards achieving compliance, with the Parties and Monitor agreeing in

advance of the first report of the data and information that must be included in such report. Defendants will not refuse any request by the Monitor for documents or other information that are reasonably related to the Monitor's review and evaluation of Defendants' compliance with the Decree, and Defendants will, upon reasonable notice, permit confidential interviews of Defendants' staff or consultants, except their attorneys. The Monitor will have access to all Class Members and their records and files, as well as to those service providers, facilities, buildings and premises that serve, or are otherwise pertinent to, Class Members, where such access is reasonably related to the Monitor's review and evaluation of Defendants' compliance with the Decree. The Defendants shall comply with Plaintiffs' requests for information that are reasonably related to Defendants' compliance with the Decree, including without limitation requests for records and other relevant documents pertinent to implementation of the Decree or to Class Members. Plaintiffs also shall be permitted to review the information provided to the Monitor. All information provided to the Monitor and/or Plaintiffs pursuant to the Decree shall be subject to the Protective Order.

19. **Compliance.** In the event the Monitor finds Defendants not in compliance with the Decree, the Monitor shall promptly meet and confer with the Parties in an effort to agree on steps necessary to achieve compliance. In the event that Plaintiffs believe that Defendants are not complying with the terms of the Decree, Plaintiffs shall notify the Monitor and Defendants of Defendants' potential non-compliance. The Monitor then shall review Plaintiffs' claims of actual or potential non-compliance and, as the Monitor deems appropriate in his or her professional judgment, meet and confer with Defendants and Plaintiffs in an effort to agree on steps necessary to achieve compliance with the Decree. If the Monitor and Parties agree, such steps shall be memorialized in writing, filed with the Court, and incorporated into, and become

enforceable as part of, the Decree. In the event that the Monitor is unable to reach agreement with Defendants and Plaintiffs, the Monitor or either Party may seek appropriate relief from the Court. In the event that Plaintiffs believe that Defendants are not in compliance with the Decree and that the Monitor has not requested appropriate relief from the Court, Plaintiffs may seek relief from the Court. The Monitor will not communicate with the Court without advance notice to the Parties.

20. **Compensation of the Monitor.** Defendants shall compensate the Monitor and his or her staff at their usual and customary rate subject to approval by the court. Defendants shall reimburse all reasonable expenses of the Monitor and the Monitor's staff, consistent with the guidelines set forth in the "Governor's Travel Control Board Travel Guide for State Employees." Defendants may seek relief from the Court if Defendants believe that any of the Monitor's charges is inappropriate or unreasonable.

## X.  NAMED PLAINTIFFS

21. Within sixty (60) days of Approval of the Decree, Defendants shall offer each of the Named Plaintiffs the opportunity to receive appropriate services in the most integrated setting appropriate to his or her needs and wishes, including PSH. Provision of services to the Named Plaintiffs pursuant to this paragraph shall not be used to determine any other individual's eligibility for services under the terms of the Decree.

## XI.  ATTORNEYS' FEES AND COSTS

22. In full settlement of all attorneys' fees incurred to date in connection with the litigation, Defendants shall pay, subject to court review and approval, $1,990,000.00 to Class Counsel. In full settlement of all out-of-pocket costs and expenses (not to include attorneys' fees) incurred to date by Class Counsel, Defendants shall pay to Class Counsel such costs and

expenses incurred by Class Counsel through and including the Approval of the Decree and any appeal thereof. Such amounts shall be distributed to Class Counsel in the manner set forth in written instructions provided by Class Counsel. Furthermore, such amounts shall be set forth in a Judgment Order to be entered by the Court. Defendants shall complete and submit all paperwork necessary for payment of such amounts, plus applicable statutory post-judgment interest, within five (5) business days after expiration of the time to appeal the fee award without the filing of a Notice to Appeal or after the issuance of the mandate by the highest reviewing court, whichever is later.

## XII. MISCELLANEOUS PROVISIONS

23. **Approval of the Decree.** Approval of the Decree shall be deemed to occur on the date the Court enters the Decree.

24. **Costs of Notices.** The cost of all notices hereunder or otherwise ordered by the Court shall be borne by Defendants.

25. **Signatories.** Each undersigned representative of a Defendant to this litigation and the Attorney General for the State of Illinois certifies that he or she is authorized to enter into the terms and conditions of the Decree and to execute and bind legally such Defendant to this document. Each undersigned representative of Plaintiffs certifies that he or she is authorized to enter into the terms and conditions of the Decree and to execute and bind legally the Plaintiffs to this document.

SO ORDERED THIS _____ DAY OF _____, 20____.

_____

United States District Judge

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Williams v. Quinn*, Case No. 05-4673, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

**FOR THE PLAINTIFF CLASS:**

Date: _____ _____

**AS ATTORNEYS FOR PLAINTIFFS:**

Date: _____ _____

**FOR DEFENDANT, GOVERNOR OF ILLINOIS:**

Date: _____ _____

**FOR DEFENDANT, SECRETARY OF ILLINOIS DEPARTMENT OF HUMAN SERVICES:**

Date: _____ _____

**FOR DEFENDANT, DIRECTOR OF DIVISION OF MENTAL HEALTH, ILLINOIS DEPARTMENT OF HUMAN SERVICES:**

Date: _____ _____

**FOR DEFENDANT, DIRECTOR OF ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES:**

Date: _____ _____

**FOR DEFENDANT, DIRECTOR OF**
**ILLINOIS DEPARTMENT OF**
**DEPARTMENT OF PUBLIC HEALTH:**

Date: _____ _____

**AS ATTORNEY FOR DEFENDANTS:**

Date: _____ _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ETHEL WILLIAMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 05 C 4673 |
| | ) | |
| vs. | ) | Judge Hart |
| | ) | Magistrate Judge Denlow |
| PAT QUINN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE PLAN**

In furtherance of their agreement to seek this Court's approval of the Parties' proposed Consent Decree, Plaintiffs Ethel Williams, Jan Wrightsell, Edward Brandon, and Gilbert Parham, on behalf of themselves and all others similarly situated, and Defendants Pat Quinn, Michelle R.B. Saddler, Lorrie Rickman Jones, Barry Maram and Damon T. Arnold, (collectively, the "Parties"), propose that the notices more fully described below be approved by the Court as fully comporting with the requirements of Federal Rule 23(e) and due process:

1.      Defendants will cause the notice set forth in Exhibit B-1 to be published in the following newspapers: *Chicago Sun-Times*, *Daily Herald*, *Southtown Star*, *Pioneer Press*, *Peoria Journal Star*, *Rockford Register Star*, *Belleville News-Democrat*, *Springfield State Journal-Register* and *Southern Illinoisan*. These publications have been identified due to their broad circulation to readers throughout Illinois. Based on publicly available information, those publications have a combined circulation of over 1 million readers. Publication will occur on a single business day within fifteen (15) business days from the date of preliminary approval of the Consent Decree.

2.     Defendants will post notice in the form set forth in Exhibit B-2 on the website of the Illinois Department of Human Services ("DHS"), Division of Mental Health (*www.dhs.state.il.us/page.aspx*) within five (5) business days from the date of preliminary approval of the Consent Decree and maintain that posting through and including the date of the fairness hearing.  DHS's Division of Mental Health is responsible for providing comprehensive services to individuals with mental illness in Illinois, including various community-based settings.

3.     Plaintiffs' counsel will cause notice in the form set forth in Exhibit B-2 to be posted on the websites of Equip for Equality (*www.equipforequality.org*), Access Living (*www.accessliving.org*), the American Civil Liberties Union of Illinois ("ACLU") (*www.aclu-il.org*), and the Bazelon Center for Mental Health Law ("Bazelon") (*www.bazelon.org*), within five (5) business days from the date of preliminary approval of the Consent Decree and maintain that posting through and including the date of the fairness hearing.  Equip for Equality is the not-for-profit corporation appointed by the State of Illinois to implement the federally-mandated Protection and Advocacy System in Illinois for persons with, among other things, psychiatric disabilities.  Access Living is the Center for Independent Living serving the City of Chicago. ACLU is a non-profit, non-partisan organization dedicated to protecting civil rights and liberties guaranteed by the U.S. Constitution.  Bazelon is a national, non-profit organization that advocates for the rights of individuals with mental illness and intellectual disabilities to participate fully and equally in their communities.  Equip for Equality, Access Living, ACLU and Bazelon work directly with individuals with psychiatric disabilities.

4.     Within ten (10) business days from the date of preliminary approval of the Consent Decree, Defendants will cause notice to be sent via first class mail in the form set forth

in Exhibit B-2 to all preadmission screening ("PAS") agencies located in the State of Illinois. PAS agencies are responsible, by contract with the State of Illinois, for determining whether individuals with mental illness are eligible for placement institutional settings.

5.      Within ten (10) business days from the date of preliminary approval of the Consent Decree, Defendants will cause notice to be sent via first class mail in the form set forth in Exhibit B-2 to the following disability rights-related organizations located in Illinois: AARP Illinois, Abraham Low Self-Help Systems, Anixter Center, Breaking Stigma Inc., Center for Disability and Elder Law, Catholic Archdiocese of Chicago – Commission on Mental Illness, CAUSE, Chicago Bar Association - Mental Health and Disability Law Committee, Chicago Coalition for the Homeless – Law Project, Chicago-Kent College of Law - Health & Disability Law Clinic, Community Behavioral Healthcare Association of Illinois, Community Counseling Centers of Chicago, Community Mental Health Board of Chicago, Community Mental Health Council, Community Renewal Society, Cook County Public Defender, Corporation for Supportive Housing - Illinois, Counseling Center of Lakeview, Deborah's Place, DePaul University College of Law - Civil Rights Clinic, Depression and Bipolar Support Alliance, Domestic Violence and Mental Health Policy Initiative, Health and Disability Advocates, Health and Medicine Policy Research Group – Center for Long Term Care Reform, Health Care Council of Illinois, Heartland Alliance – Heartland Health Outreach, Inc., Human Resources Development Institute, Illinois Association of Community Mental Health Authorities, Illinois Citizens for Better Care, Illinois Guardianship and Advocacy Commission, Illinois Healthcare Association, Illinois Hospital Association, Illinois Legal Aid Online, Illinois Long-term Care Ombudsman, Illinois Mental Health Planning and Advisory Council, Illinois Network of Centers for Independent Living, Illinois Psychiatric Society, Illinois Psychological Association, Illinois

Rural Health Association, Illinois Society for Clinical Social Work, Illinois State Bar Association – Mental Health Law Committee, Lawyers' Committee for Civil Rights Under Law, Jewish Vocational Services, John Howard Association, John Marshall Law School - Fair Housing Clinic, League of Women Voters of Illinois, Loyola University School of Law - Civitas ChildLaw Clinic, Lutheran Social Servies of Illinois, Mayor's Office for People with Disabilities (Chicago), Mental Health America of Illinois, Mental Health Consumer Education Consortium, Mental Health Services – DuPage County Health Department, Metropolitan Chicago Homeless Action Committee, National Alliance on Mental Illness of Greater Chicago, National Alliance on Mental Illness of Illinois, National Alliance on Mental Illness of South Suburbs of Chicago, National Association of Social Workers – Illinois Chapter, National Mental Health Voter Empowerment Project of Illinois, Next Steps, Northern Illinois University College of Law - Elder Law Clinic, Northwestern School of Law - Bluhm Legal Clinic, Obsessive Compulsive Foundation of Chicago, Office of the Cook County Public Guardian, Sankofa Organization of Illinois, Inc., Southern Illinois University School Law - Civil Practice / Elderly Clinic, Supportive Housing Providers Association of Illinois, Thresholds Psychiatric Rehabilitation Centers, Transitions, Trilogy, Inc., Trinity Services, University of Chicago Law School - Mandel Legal Aid Clinic, University of Illinois College of Law - Federal Civil Rights Clinic. These organizations work directly with individuals with mental illness.

6.     Within fifteen (15) business days from the date of preliminary approval of the Consent Decree, Defendants will cause notice to be sent via first class mail in the form set forth in Exhibit B-2 to all 26 private IMDs in Illinois. The notice will be accompanied by a letter from Defendants requesting that the IMDs (1) post the notice within forty-eight (48) hours of receipt on bulletin boards, in dining areas and large recreational areas, and maintain such posting

through and including the date of the fairness hearing; (2) distribute a copy of the notice to each IMD resident and maintain a master list of resident signatures verifying receipt of the notice; and (3) take reasonable steps to make the notice available to residents and their family members and/or guardians.

7.    All notices sent pursuant to Paragraphs 4 - 6, above, shall be sent in envelopes that indicate: "CONTAINS OFFICIAL LEGAL NOTICE."

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ETHEL WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05 C 4673 |
| | ) | |
| vs. | ) | |
| | ) | Judge William T. Hart |
| | ) | Magistrate Judge Morton Denlow |
| PAT QUINN, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## EXHIBIT B-1: FORM OF SUMMARY PUBLICATION NOTICE

### LEGAL NOTICE OF PROPOSED CLASS ACTION CONSENT DECREE AND HEARING

**If you are a person in Illinois 18 years of age or older with mental illness living in an Institution for Mental Disease ("IMD"), a class action lawsuit may affect your rights.**

This Notice is being published by order of the United States District Court for the Northern District of Illinois to inform you of the proposed settlement of a class action lawsuit (*Williams v. Quinn*, Case No. 05-4673) set forth in a proposed Consent Decree ("Consent Decree") against the State of Illinois, the Illinois Department of Human Services, Illinois Department of Human Services, Division of Mental Health, the Illinois Department of Healthcare and Family Services and the Illinois Department of Public Health regarding services provided to individuals with mental illness residing in IMDs.

The parties to that lawsuit have reached a proposed Consent Decree that, if approved by the Court, would provide certain rights and benefits to eligible individuals with mental illness.

The Court will hold a hearing to consider whether to approve the proposed Consent Decree on _____ **at** _____ **a.m.** before the Honorable William T. Hart, United States District Judge, in the Dirksen Federal Building, 219 S. Dearborn Street, Room 2243, Chicago, Illinois 60604.

**Who Is Included?** You are a class member whose rights may be affected by the proposed Consent Decree if you are a person in Illinois 18 years of age or older who: (a) has a mental illness; (b) is institutionalized in a privately owned IMD; and (c) with appropriate supports and services may be able to live in an integrated community setting.

**What Does the Proposed Settlement Provide?**   Plaintiffs and Defendants have asked the Court to enter an order that, if approved, would provide certain rights and benefits (as more fully described in the proposed Consent Decree) to eligible individuals with mental illness living in IMDs.   The Consent Decree provides eligible class members the opportunity to make meaningful informed choices about where they live; requires Defendants to ensure that supports and services are available to individuals with mental illness in integrated, non-institutional settings; and establishes procedures to avoid unjustified institutionalization.

**How Can I Get More Information?**   A detailed Notice describing the proposed Consent Decree, the rights of class members and a copy of the proposed Consent Decree itself are available on the website of the Illinois Department of Human Services, Division of Mental Health:   *www.dhs.state.il.us/page.aspx*,   and   on   the   website   of   Equip   for   Equality: *www.equipforequality.org*, Access Living: *www.accessliving.org*,the American Civil Liberties Union of Illinois: *www.aclu-il.org*, and the Bazelon Center for Mental Health Law: *www.bazelon.org*. If you have any questions for plaintiffs' lawyers, you may write to Benjamin Wolf, ACLU of Illinois, 180 N. Michigan Avenue, Suite 2300, Chicago, Illinois, 60601.


DATED: _____, 2010          _____

United States District Court
Northern District of Illinios

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ETHEL WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05 C 4673 |
| | ) | |
| vs. | ) | |
| | ) | Judge William T. Hart |
| | ) | Magistrate Judge Morton Denlow |
| PAT QUINN, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## EXHIBIT B-1: FORM OF SUMMARY PUBLICATION NOTICE

### LEGAL NOTICE OF PROPOSED CLASS ACTION CONSENT DECREE AND HEARING

**If you are a person in Illinois 18 years of age or older with mental illness living in an Institution for Mental Disease ("IMD"), a class action lawsuit may affect your rights.**

This Notice is being published by order of the United States District Court for the Northern District of Illinois to inform you of the proposed settlement of a class action lawsuit (*Williams v. Quinn*, Case No. 05-4673) set forth in a proposed Consent Decree ("Consent Decree") against the State of Illinois, the Illinois Department of Human Services, Illinois Department of Human Services, Division of Mental Health, the Illinois Department of Healthcare and Family Services and the Illinois Department of Public Health regarding services provided to individuals with mental illness residing in IMDs.

The parties to that lawsuit have reached a proposed Consent Decree that, if approved by the Court, would provide certain rights and benefits to eligible individuals with mental illness.

The Court will hold a hearing to consider whether to approve the proposed Consent Decree on _____ **at** _____ **a.m.** before the Honorable William T. Hart, United States District Judge, in the Dirksen Federal Building, 219 S. Dearborn Street, Room 2243, Chicago, Illinois 60604.

**Who Is Included?**    You are a class member whose rights may be affected by the proposed Consent Decree if you are a person in Illinois 18 years of age or older who: (a) has a mental illness; (b) is institutionalized in a privately owned IMD; and (c) with appropriate supports and services may be able to live in an integrated community setting.

**What Does the Proposed Settlement Provide?**    Plaintiffs and Defendants have asked the Court to enter an order that, if approved, would provide certain rights and benefits (as more fully described in the proposed Consent Decree) to eligible individuals with mental illness living in IMDs.    The Consent Decree provides eligible class members the opportunity to make meaningful informed choices about where they live; requires Defendants to ensure that supports and services are available to individuals with mental illness in integrated, non-institutional settings; and establishes procedures to avoid unjustified institutionalization.

**How Can I Get More Information?**  A detailed Notice describing the proposed Consent Decree, the rights of class members and a copy of the proposed Consent Decree itself are available on the website of the Illinois Department of Human Services, Division of Mental Health: *www.dhs.state.il.us/page.aspx*, and on the website of Equip for Equality: *www.equipforequality.org*, Access Living: *www.accessliving.org*, the American Civil Liberties Union of Illinois: *www.aclu-il.org*, and the Bazelon Center for Mental Health Law: *www.bazelon.org*. If you have any questions for plaintiffs' lawyers, you may write to Benjamin Wolf, ACLU of Illinois, 180 N. Michigan Avenue, Suite 2300, Chicago, Illinois, 60601.


DATED: _____, 2010          _____

United States District Court
Northern District of Illinois

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ETHEL WILLIAMS, JAN WRIGHTSELL, EDWARD BRANDON, GILBERT PARHAM, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 05 C 4673 |
| PAT QUINN, in his official capacity as Governor of the state of Illinois, MICHELLE R. B. SADDLER, in her official capacity as Secretary of the Illinios Department of Human Services, LORRIE RICKMAN JONES, in her official capacity as Director of the Illinois Department of Human Services, Division of Mental Health, BARRY MARAM, in his official capacity as Director of the Illinois Department of Healthcare and Family Services, and Damon T. Arnold, in his official capacity as Director of the Illinois Department of Public Health, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge William T. Hart Magistrate Judge Morton Denlow |
| Defendants. | ) | |

---

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND HEARING

### PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY

*A SETTLEMENT HAS BEEN PROPOSED THAT MAY AFFECT THE RIGHTS OF INDIVIDUALS WITH MENTAL ILLNESS LIVING IN INSTITUTIONS FOR MENTAL DISEASES WHO MAY BE ABLE TO LIVE IN COMMUNITY-BASED PLACEMENTS.*

## BASIC INFORMATION

### 1..WHY DID YOU GET THIS NOTICE?

You were sent this Notice to inform you about the proposed settlement of the class action lawsuit, as set forth in the Consent Decree ("Consent Decree") proposed in this case, which may

affect the rights of individuals with mental illness living in Institutions for Mental Diseases ("IMDs") who with appropriate supports and services may be able to live in community-based placements. This Notice was sent to you and other people (and/or guardians or legal representatives) in Illinois who have been identified as being eighteen (18) years of age or older with a mental illness and who may be able to live in community-based placements, as well as individuals and entities who care for and work with them.

This Notice explains the lawsuit and the key terms of the Consent Decree, tells you how to obtain more information, explains how to determine whether an individual with a mental illness living in an IMD is a Class Member in the lawsuit, and explains how Class Members (and/or their legal representatives) can tell the Court whether they disagree with the Consent Decree or some part of it.

The Consent Decree described in this Notice is subject to Court approval, and thus has not yet been made final. The Court has scheduled a hearing to determine the fairness, adequacy and reasonableness of the Consent Decree and to consider any objections or comments Class Members may have to the Decree.

The Consent Decree may affect the rights of individuals with mental illness living in private IMDs who may be able to live in community-based placements. **The Consent Decree does not require anyone currently living in an IMD to move out against his or her wishes.**

## 2. WHAT IS THIS LAWSUIT ABOUT?

The Court in charge of the lawsuit is the United States District Court for the Northern District of Illinois, and the case is known as *Williams v. Quinn*, Case No. 05 C 4673. The people who sued are called the Plaintiffs, and the people they sued are called the Defendants.

Plaintiffs filed this lawsuit on August 15, 2005, seeking to prevent what they allege is their unnecessary segregation in IMDs by Defendants. The named Plaintiffs are adults with mental illness who are institutionalized in IMDs. The named Defendants are Pat Quinn, who is the Governor of the State of Illinois, Michelle R.B. Saddler, who is the Secretary of the Illinois Department of Human Services, Lorrie Rickman Jones, who is the Director of the Illinois Department of Human Services, Division of Mental Health, Barry Maram, who is the Director of the Illinois Department of Healthcare and Family Services, and Damon T. Arnold, who is the Director of the Illinois Department of Public Health. The Defendants are responsible for administering the State of Illinois' programs for people with mental illness. The lawsuit seeks to compel the State of Illinois (through the Defendants) to comply with federal law and rulings of the United States Supreme Court by offering individuals with mental illness the opportunity to make meaningful, informed choices about whether to live in community-based settings.

## 3. WHAT IS A CONSENT DECREE AND WHY IS IT BEING PROPOSED HERE?

A Consent Decree is a final order of the court in a case that is agreed to by all Plaintiffs and Defendants. The Court in this case did not decide in favor of either Plaintiffs or Defendants. There

was not a trial. Instead, all of the Plaintiffs and Defendants agreed to settle the case according to certain terms that are stated in the Consent Decree. Those terms are set forth in the Consent Decree, which the Plaintiffs and Defendants have asked the Court to enter as an official order of the Court. That way, the cost of a trial is avoided, and the people affected will get relief. The Plaintiffs who filed the lawsuit and their attorneys think the Consent Decree is best for the people who are Class Members.

## 4. WHO IS A CLASS MEMBER?

The Court has certified the lawsuit as a class action and decided that everyone who fits this description is a Class Member: adults in Illinois who: (a) have a Mental Illness (as defined below); (b) are institutionalized in a privately owned Institutions for Mental Diseases; and (c) with appropriate supports and services may be able to live in an integrated community setting.

## 5. WHAT IS CONSIDERED A "MENTAL ILLNESS"?

In the Consent Decree, "Mental Illness" means: a disability that is attributable to a diagnosis of severe mental illness, defined as the presence of a major disorder,[1] excluding alcohol and substance abuse, Alzheimer's disease, and other forms of dementia based upon organic or physical disorders. A serious mental illness is determined by all of the following three areas: (1) diagnoses that constitute a serious mental illness are: Schizophrenia; Delusional disorder; Schizo-affective disorder; Psychotic disorder not otherwise specified; Bipolar disorder 1 - mixed, manic, and depressed; Bipolar disorder II; Cyclothymic disorder; Bipolar disorder not otherwise specified I; Major depression, recurrent; (2) in addition, the individual must be 18 years of age or older and be substantially functionally limited due to mental illness in at least two of the following areas: Self-maintenance; Social functioning; Community living activities; or Work-related skills; and (3) the disability must be of an extended duration expected to be present for at least a year, which results in a substantial limitation in major life activities. Individuals will typically also have one of the following characteristics: (1) have experienced two or more psychiatric hospitalizations; (2) receive Social Security Income (SSI) or Social Security Disability Income (SSDI) because of mental illness, or have been deemed eligible for SSI or SSDI.

## THE SETTLEMENT

## 6. WHAT DOES THE CONSENT DECREE IN THIS CASE PROVIDE?

The Consent Decree that the Plaintiffs and Defendants have asked the Court to enter in this case, if approved by the Court, would provide certain rights and benefits (as more fully described in the Consent Decree) to eligible Class Members as defined above. If the Consent Decree is not approved, it will be withdrawn and the lawsuit will continue. A copy of the entire Consent Decree

---

[1] As classified in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV) (American Psychiatric Association, 1400 K Street NW, Washington, DC 2005).

is available on the website of the Illinois Department of Human Services, Division of Mental Health: *www.dhs.state.il.us/page.aspx*, and on the websites of Equip for Equality: *www.equipforequality.org*, Access Living: *www.accessliving.org*, the American Civil Liberties Union of Illinois: *www.aclu-il.org*, and the Bazelon Center for Mental Health Law: *www.bazelon.org*.

All Plaintiffs and Defendants in this case believe that the Consent Decree is fair, reasonable and adequately affords relief to all eligible Class Members. The parties believe the Consent Decree provides eligible Class Members the opportunity to make meaningful, informed choices about where they live, requires Defendants to make sure that they make supports and services available to individuals with mental illness living in IMDs who wish to receive services or placement in community-based settings, and establishes procedures to allow individuals with mental illness to choose placement in community-based settings, while still maintaining the choice of private IMDs.

The following is a brief summary of key terms in the Consent Decree.

Development of Community Capacity. The Consent Decree requires Defendants to ensure the availability of services, supports and other resources to meet their obligations under the Decree and in particular to provide community-based settings and community-based services.

Benefits for Class Members Currently Residing in IMDs. The Consent Decree ensures that for individuals currently residing in IMDs who do not oppose moving to a community-based setting and who are otherwise appropriate for community placement, Defendants will develop a service plan specific to each person. The service plan will describe the services required, where and how such services will be developed and obtained, and a timetable for promptly completing that transition. The service plan will be developed by a qualified professional in conjunction with the Class Member and, where one has been appointed, the Class Member's legal guardian, and other appropriate people of his or her choosing.

Within five years after finalization of the Implementation Plan described below, all persons residing in IMDs who are appropriate for and do not oppose placement in community-based settings will transition to such settings. The Consent Decree sets forth interim benchmarks as well, with not less than forty percent (40%) of such persons transitioning within three (3) years, and not less than seventy percent (70%) transitioning within four (4) years of finalization of the Implementation Plan.

Named Plaintiffs will be offered the opportunity to be evaluated within 60 days of approval of the Consent Decree.

***The Consent Decree does not require or force anyone to receive a service plan or to move out of an IMD.***

Implementation Plan. The Consent Decree requires Defendants to develop an Implementation Plan to establish specific tasks, timetables, and protocols to ensure that Defendants fulfill the requirements of each provision of the Consent Decree.

Monitoring and Compliance. Under the Consent Decree, the Court will appoint an independent and impartial Monitor who is knowledgeable concerning the management and oversight of programs serving individuals with mental illness. The Monitor will be responsible for assisting the Court in evaluating Defendants' compliance or non-compliance with the Consent Decree.

Attorneys' Fees and Costs. Under the Consent Decree, Defendants will pay, subject to court review and approval, $1,990,000.00 to Class Counsel in full settlement of attorneys' fees incurred in connection with the lawsuit. Additionally, Defendants will pay all costs and expenses incurred by Class Counsel through and including the approval of the Consent Decree and any appeal thereof. Class Members do not have to pay anything to Class Counsel.

## 7. WHAT IS CONSIDERED A "COMMUNITY-BASED SETTING" AND WHAT ARE CONSIDERED "COMMUNITY-BASED SERVICES"?

In the Consent Decree, "Community-Based Setting" means the most integrated setting appropriate for a person with mental illness, where the setting is designed to promote independence in daily living, economic self-sufficiency and the ability to interact with non-disabled persons to the fullest extent possible. A Community-Based Setting may include: (1) Permanent Supportive Housing; (2) independent housing with the Class Member's family or friends; (3) other independent housing not owned or operated by a social service entity; or (4) any supported or supervised residential service within the DMH service array.

In the Consent Decree, "Community-Based Services" means those services (other than a placement in a Community-Based Setting) available under the Illinois Medicaid State Plan, as well as the services described in the Medicaid Community Mental Health Services Program administered by the Illinois Department of Human Services' Division of Mental Health and authorized pursuant to 59 Ill. Adm. Code Part 132.

## 8. WILL CLASS MEMBERS RECEIVE MONEY FROM THE CONSENT DECREE?

No. The lawsuit did not seek money damages on behalf of any Class Members, and there is no money awarded to any Class Members as part of the Consent Decree.

## CLASS MEMBERS' RIGHTS

Class Members (and/or guardians or legal representatives) can tell the Court whether they disagree with the Consent Decree or some part of it.

**9. HOW DO YOU TELL THE COURT THAT YOU OBJECT TO OR SUPPORT THE CONSENT DECREE?**

All Class Members have the right to object to or support the Consent Decree and to give reasons why they believe the Court should or should not approve it. The Court will consider those views. Any comment must include the name and number of the case (*Williams v. Quinn*, Case No. 05 C 4673), as well as a statement of the reasons (in no more than 5 pages) why the Court should or should not approve the Consent Decree. Be sure to include your name, address, telephone number, and your signature. Comments must state reasons why the Decree should or should not be approved.

All comments must be sent by U.S. Mail and postmarked no later than _____, 2010, to Benjamin Wolf, ACLU of Illinois, 180 N. Michigan Avenue, Suite 2300, Chicago, Illinois, 60601. Attorney Benjamin Wolf, the lead counsel for the plaintiff class, will inform the Court and other counsel for the Plaintiffs and Defendants of the comments that he receives and that Class Members want presented to the Court.

<u>**THE COURT'S FAIRNESS HEARING**</u>

The Court will hold a Fairness Hearing to decide whether to approve the Consent Decree.

**10. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE CONSENT DECREE?**

The Fairness Hearing will be held before the Honorable William T. Hart, United States District Judge, in the Dirksen Federal Building, 219 S. Dearborn Street, Room 2243, Chicago, Illinois 60604 on _____, 2010 at ___ a.m. At this hearing, the Court will consider whether the Consent Decree is fair, reasonable and adequate to the Class. The Court will consider any objections made according to the procedures described above.

**11. DO YOU HAVE TO COME TO THE HEARING?**

All Class Members are entitled to attend the Fairness Hearing if they choose to do so, but no one is required to attend the Fairness Hearing. Plaintiffs' and Defendants' lawyers will be available to answer questions Judge Hart may have. If you mail a comment in accordance with the procedures described in Section 9, above, of this Notice, you do not have to come to Court to talk about it. As long as you mailed your written comment in accordance with the procedures described in Section 9, above, of this Notice, the Court will consider it.

**12. WHO CAN SPEAK AT THE FAIRNESS HEARING?**

You may ask the Court for permission to speak at the Fairness Hearing. The Judge will decide whether you are permitted to do so. To request permission, you should send a "Notice of

Intention to Appear in *Williams v. Quinn*, Case No. 05 C 4673" to Plaintiffs' counsel. Be sure to include your name, address, telephone number, and your signature.

Your Notice of Intention to Appear should be submitted by sending a copy of such Notice postmarked no later than _____, to Benjamin Wolf, ACLU of Illinois, 180 N. Michigan Avenue, Suite 2300, Chicago, Illinois, 60601. Benjamin Wolf will share copies of the Notices of Intention to Appear with other counsel for the parties and file it with the court.

## LAWYERS REPRESENTING THE CLASS

### 13. WHO ARE THE CLASS MEMBERS' LAWYERS IN THE CASE?

The Court ordered that the following attorneys represent the Class Members. These lawyers are called "Class Counsel."

Benjamin S. Wolf
THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS
180 North Michigan Avenue
Suite 2300
Chicago, IL 60601

John Whitcomb
EQUIP FOR EQUALITY
20 N. Michigan, #300
Chicago, IL 60602

Jennifer Mathis
THE BAZELON CENTER FOR MENTAL HEALTH LAW
1101 15th Street, NW
Suite 1212
Washington, DC 20005

Edward Mullen
ACCESS LIVING OF METROPOLITAN CHICAGO
115 West Chicago Avenue
Chicago, IL 60610

Donna M. Welch, P.C.
Joseph M. Russell
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Class Members will not be charged for these lawyers' fees or expenses.

## GETTING MORE INFORMATION

**14. HOW DO YOU GET MORE INFORMATION ABOUT THE CONSENT DECREE?**

A copy of the entire Consent Decree is available on the website of the Illinois Department of Human Services, Division of Mental Health: *www.dhs.state.il.us/page.aspx*, and on the websites of Equip for Equality: *www.equipforequality.org*, Access Living: *www.accessliving.org*, the American Civil Liberties Union of Illinois: *www.aclu-il.org*, and the Bazelon Center for Mental Health Law: *www.bazelon.org*.

If you have any questions for plaintiffs' lawyers or want to request that a copy of the Consent Decree be mailed to you, you may write to Benjamin Wolf, ACLU of Illinois, 180 N. Michigan Avenue, Suite 2300, Chicago, Illinois, 60601, or call Benjamin Wolf at 312-201-9740 ext. 301.

DATED: _____, 2010         _____
                                United States District Court
                                Northern District of Illinois