IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ETHEL WILLIAMS, JAN WRIGHTSELL, EDWARD BRANDON, and GILBERT PARHAM, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PAT QUINN, in his official capacity as Governor of the State of Illinois, CAROL L. ADAMS, in her official capacity as Secretary of the Illinois Department of Human Services, LORRIE STONE, in her official capacity as Director of the Division of Mental Health of the Illinois Department of Human Services, ERIC E. WHITAKER, in his official capacity as Director of the Illinois Department of Public Health, and BARRY S. MARAM, in his official capacity as Director of the Illinois Department of Healthcare and Family Services, <br><br> Defendants. | No. 05 C 4673 |

## **OPINION AND ORDER**

This class action concerns the State of Illinois's alleged duty under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101(a)(2), 12101(a)(5), 12132, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), to provide qualified persons with mental illnesses who reside in privately owned Institutions for Mental Diseases ("IMD") the opportunity to be placed in an integrated community setting. See generally

Olmstead v. L.C., 527 U.S. 581 (1999). The defendants in this case, all sued in their official capacity, are the Governor of Illinois; the Secretary of the Illinois Department of Human Services; the Director of the Division of Mental Health of the Department of Human Services; the Director of the Illinois Department of Public Health; and the Director of the Illinois Department of Healthcare and Family Services. There are 25 IMDs in Illinois and none are named parties in this litigation, but each IMD is potentially affected by the resolution of this case. The IMDs have been the subjects of certain discovery and have been permitted to comment on certain aspects of this case, both orally at hearings and in writing. The IMDs initially appeared in this case to seek to quash subpoenas that were served on them. A Fed. R. Civ, P 23(b)(2) class has been certified "consisting of Illinois residents who: (a) have a mental illness; (b) are institutionalized in a privately owned Institution for Mental Diseases; and (c) with appropriate supports and services may be able to live in an integrated community setting." Williams v. Blagojevich, 2006 WL 3332844 *5 (N.D. Ill. Nov. 13, 2006).

The Class[1] and defendants have entered into a Settlement Agreement, which has been preliminarily approved. See Order dated May 27, 2010 [Docket Entries 266-67]. A hearing to consider the

---

[1] Arguments and other statements made by Class Counsel are considered to be statements of the Class, as distinguished from statements made on behalf of the Class Objectors.

fairness of the Settlement is set for September 7, 2010. All comments or objections concerning the Settlement are due by August 10, 2010, with the parties having until August 24, 2010 to respond to any comments or objections that are received. Prior to preliminary approval, the IMDs expressed objections to preliminary approval. Also, prior to the Settlement being presented to the court for preliminary approval, the plaintiffs and/or defendants discussed the terms of the Settlement with one or more IMD representatives and considered, but did not necessarily accept, the IMDs' views and suggestions. Additionally, William Choslovsky, an attorney who is being paid by all or some of the IMDs, has filed an appearance on behalf of certain class members who object to the Settlement (the "Class Objectors").[2] The Class Objectors filed a brief opposing preliminary approval.

Notice to the Class regarding the Settlement and Fairness Hearing was accomplished through publication in newspapers throughout the state, notices posted on websites of defendants and organizations funding the litigation, and notices mailed to the IMDs who cooperated by forwarding the notices to residents and their guardians. Shortly after distributing the court's Notice, many or all of the IMDs distributed their own information sheets

---

[2] Two other members of Choslovsky's law firm have also filed appearances on behalf of the Class Objectors. References to Choslovsky in today's ruling should be understood to apply to all the lawyers representing the same group of Objectors.

("IMD Notices") to residents and family members urging them to object to the Settlement. A few samples of the IMD Notices have been provided and the parties agree they are representative. The IMD Notices include contact information for Choslovsky and state that the particular IMD is paying his fee. The IMDs represent that, following receipt of the court Notice, they received so many inquiries from residents and family members that they were compelled to provide a response.[3] The Class contends that the IMD Notices are misleading and designed to scare class members into objecting to the Settlement.

As is stated in the IMD Notices, Choslovsky acknowledges that his fees are paid by the IMDs. He contends, however, that the Class Objectors, not the IMDs are his clients. The Class has requested disclosure of details of Choslovsky's arrangement with the IMDs, but no such disclosure has been made. Choslovsky also does not expressly deny being involved in preparing the IMD Notices. Since Choslovsky admits his fees are paid by the IMDs

---

[3]The Class questions whether this is the true motive since at least one IMD sent out the IMD Notices the day after the court Notice and the IMD Notices have indications that they were prepared ahead of time. But regardless of the IMDs' motives, the question is whether the IMD Notices are misleading and/or undermine the court Notice and whether a corrective notice would be appropriate.

and apparently has consulted with the IMDs, for present purposes, it may be assumed that the IMDs are also his client.

The Class Objectors have moved for permission to contact other class members. Choslovsky seeks guidelines for responding to invitations from the IMDs to come speak at meetings at which residents and family members can ask questions about the Settlement, including how to object to it. It is proposed that Class Counsel will be provided at least 48 hours notice of any such meetings and also be permitted to speak at the meetings. The Class opposes granting permission for such contact and instead requests that Choslovsky be prohibited from contacting class members unless permission is first obtained from Class Counsel or the class member initiates contact for purposes of seeking representation. The Class also requests that corrective notice be sent in order to correct misrepresentations made in the IMD Notices, but has not provided any proposed language or format for a corrective notice.[4] Both the Class Objectors and the IMDs have responded to the Class's requests.[5]

---

[4] The Class also requests that the court consider misrepresentations in the IMD Notices in weighing objections received from class members. Such a request is premature and will not be considered. The schedule previously set allows the parties to respond to any objections that may be received.

[5] The Class's motion to strike the IMDs' reply will be denied. The IMD will be granted leave to file the reply and the appearance of their attorney. The IMDs' reply has been considered.

Since a Class has been certified, all members of the Class are deemed to be represented by Class Counsel unless a particular class member retains different counsel. See Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985); Blanchard v. EdgeMark Fin. Corp., 175 F.R.D. 293, 300-01 (N.D. Ill. 1997) (quoting Manual for Complex Litigation § 30.2 at 234 (3d ed. 1995)); In re Potash Antitrust Litig., 896 F. Supp. 916, 920 (D. Minn. Jul 17, 1995) (same); Resnick v. American Dental Ass'n, 95 F.R.D. 372, 376 (N.D. Ill. 1982); Manual for Complex Litigation § 21.33 at 300 (4th ed. 2004) ("MCL 4th") ("Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel."). Like most jurisdictions, the Professional Conduct Rules of this court provide: "During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law."[6] N.D. Ill. Loc. R. 83.54.2.

Class members, of course, are free to retain counsel other that Class Counsel. No class member will be prohibited from

---

[6]The Committee Comment provides in part: "This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question."

*initiating* contact with another attorney for such purposes, even an attorney who already represents other parties involved in this matter.

Choslovsky already represents parties involved in this matter, that is, the Class Objectors. Therefore, in accordance with applicable rules, Choslovsky will not be permitted to initiate contact with additional class members without first obtaining permission from Class Counsel who represents the class members. The Class Objectors' motion will be denied and the Class's request to prohibit Choslovsky from initiating contact with additional class members without first obtaining permission from Class Counsel will be granted. Also, the IMDs should not initiate any further communications with residents or family members in which they solicit them to seek representation from particular attorneys. The Class does not request and this court will not preclude Choslovsky from responding to contacts from additional class members who may have learned of him through the IMD notices or other previous communications from the IMDs.

The IMD Notices expressly exhort residents and their families to object to the Settlement. The IMDs may express their views. This court, however, must ensure that proper and adequate notice is provided to the Class. This power extends to non-parties that interfere with this duty of the court. See In re Synthroid Mktg. Litig., 197 F.R.D. 607, 610 (N.D. Ill. 2000); MCL 4th § 21.33 at 300. The Class Objectors so concede and the

IMDs do not contend otherwise. This includes the power to send notices correcting misleading communications with the Class. See Georgine v. Amchem Prod., Inc., 160 F.R.D. 478, 518 (E.D. Pa. 1995); Ladegaard v. Hard Rock Concrete Cutters, Inc., 2001 WL 1403007 *7 (N.D. Ill. Nov. 9, 2001); MCL 4th § 21.313 at 297, § 21.33 at 300-01. Cf. Synthroid, supra.

The IMD Notices appeal to residents' and family members' fears by overstating, as a foregone conclusion, the possibility that approval of the Settlement would result in IMDs being closed and residents being out on the street with no provision for food, medicine, or shelter. See, e.g., [270-1] at 4, 5 ("Where will I go? Who will I live with? Who will help me? How will I eat? When will I see my doctor?").[7] The IMD Notices do not provide the full definition of who is a class member, stating simply that all residents of IMDs are class members and omitting, as was stated in the class notice, that being a class member also includes being someone who "with appropriate supports and services may be able to live in an integrated community setting."[8] See id. at 1, 3. It is misstated that appearing at the Fairness Hearing is the only

---

[7]The bracketed number is the docket entry number and page references are to the page numbers of the entry, not the page numbers of the individual documents within the entry.

[8]Prior to evaluations, it is not necessarily clear which residents fail to meet this definition and the parties apparently are presuming all residents are potential class members. Nevertheless, it is misleading to omit the full definition.

opportunity to state objections, see id. at 1, because objections can also be submitted in writing.

It is stated: "Because the settlement does not provide any details on how Illinois will continue to fund facilities such as ours, however, there are no guarantees that facilities such as ours will continue to operate." Id. at 4. See also id. at 8 ("Although the settlement does not require closing any particular IMD, it also does not guarantee continued funding for IMDs. Without funding, the 'choice' to remain in an IMD may become no choice at all, and IMDs may eventually close."); 10. This is misleading because there is not presently any guarantee that Illinois will fund IMDs. If an IMD closes, residents would have the same procedural rights as they presently have. Also, it is estimated about half of the 4300 IMD residents could live in a community setting so there would still need to be IMDs even if all qualified persons relocated to a community setting.

Implications that those transferred to a community setting would be left without housing, food, or medical care, id. at 4, 5, 10, are misleading in that the Settlement provides that the community placements are to include provisions for such.

It is stated that one lawyer who filed the case represents all 4300 IMD residents in Illinois, implying that one attorney is insufficient to represent 4300 people. Id. at 4. This is misleading because there is a team of lawyers representing the Class.

The IMD Notice is misleading by implying, contrary to provisions of the Settlement, that doctors and case workers generally will not be consulted when making decisions to transfer to community living. See id. at 8, 10.

It is inaccurately stated that the attorneys representing the class brought the case on a "pro bono" basis, but will receive $1,990,000 plus expenses. Id. at 9, 10. The attorneys, however, did not take the case on a pro bono basis. Moreover, the attorneys at private law firms have agreed that any portion of a fee payment that they would otherwise be entitled to receive will go to the non-profit organizations involved in this lawsuit.

The Class has not submitted a proposed corrective notice nor recommended a procedure for such distribution. Therefore, no corrective notice will be required.

IT IS THEREFORE FOUND AND ORDERED as follows:

(1) It is found that misleading statements have been distributed to IMD residents and their families.

(2) Objecting Class Plaintiffs' motion regarding communications [270] is denied.

(3) William Choslovsky and other attorneys representing Objecting Class Plaintiffs shall not initiate contact with additional class members.

(4) Class plaintiffs' motion to strike reply brief [278] is denied.

(5) Certain IMDs' motion to file reply and appearance of attorney [281] is granted.

(6) August 5, 2010 motion hearing date is stricken.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: JULY 27, 2010